✓ FILED ___ ENTERED
___ LOGGED ___ RECEIVED

10:56 am, Sep 01 2022
AT BALTIMORE
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY _____ Deputy

JTW: 11.10.21

**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*

*John W. Sippel, Jr.*
*Assistant United States Attorney*
*John.Sippel@usdoj.gov*

*Suite 400*
*36 S. Charles Street*
*Baltimore, MD 21201-3119*

*DIRECT: 410-209-4807*
*MAIN: 410-209-4800*
*FAX: 410-962-3124*

November 10, 2021

Jennifer E. Smith, Esquire
8 E. Mulberry Street
Baltimore, Maryland 21202

> **Re:  United States v. Noland Rheubottom**
> **Criminal no. SAG-20-0428**

Dear Counsel:

This letter, together with the Sealed Supplement, confirms the plea agreement (this "Agreement") that has been offered to your client, Noland Rheubottom (hereinafter "Defendant"), by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have the Defendant execute it in the spaces provided below. If this offer has not been accepted by **December 15, 2021**, it will be deemed withdrawn. The terms of the Agreement are as follows:

### Offenses of Conviction

1.     The Defendant agrees to plead guilty pursuant to Fed. R. Crim. Proc. 11(c)(1)(C) to Counts Five and Six of the Indictment, which charge the Defendant with Interference with Commerce with Robbery, in violation of 18 U.S.C. § 1951(a), and Using, Carrying, and Brandishing a Firearm During and in Relation to a Crime of Violence, in violation of 18 U.S.C. § 924(c), respectively. The Defendant admits that he is, in fact, guilty of the offenses and will so advise the Court.

### Elements of the Offenses

2.     The elements of the offenses to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows:

### **Count Five**

On or about December 22, 2019, in the District of Maryland,

> a.     the Defendant knowingly and intentionally obtained the property of another, or from the presence of another;

United States v. Noland Rheubottom
November 9, 2021
Page 2

> b.   the Defendant did so by wrongful use of actual or threatened force,
>      violence, or fear; and
>
> c.   that, as a result of the Defendant's actions, interstate commerce, or
>      an item moving in interstate commerce, was obstructed, delayed, or
>      affected in any way or degree.

## Count Six

On or about December 22, 2019, in the District of Maryland,

> a.   the Defendant committed a crime of violence, specifically Interference with
>      Commerce by Robbery, as charged in Count Five of the Indictment, for
>      which he might be prosecuted in a court of the United States; and
>
> b.   the Defendant knowingly used, carried, and brandished a firearm during and
>      in relation to the crime charged in Count Five of the Indictment.

### Penalties

3.      The maximum penalties provided by statute for the offense to which the Defendant
is pleading guilty are as follows:

| Count | Statute | Minimum Prison | Maximum Prison | Supervised Release | Maximum Fine | Special Assessment |
|-------|---------|----------------|----------------|--------------------|--------------|--------------------|
| 5 | 18 U.S.C. § 1951(a) | N/A | 20 years | 3 years | $250,000 | $100 |
| 6 | 18 U.S.C. § 924(c) | 7 years (mandatory minimum) | Life | 5 years | $250,000 | $100 |

a.      Prison: If the Court orders a term of imprisonment, the Bureau of Prisons
has sole discretion to designate the institution at which it will be served.

b.      Supervised Release: If the Court orders a term of supervised release, and
the Defendant violates the conditions of supervised release, the Court may order the Defendant
returned to custody to serve a term of imprisonment as permitted by statute, followed by an
additional term of supervised release.

United States v. Noland Rheubottom
November 9, 2021
Page 3

       c.     Restitution: The Court may order the Defendant to pay restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664.

       d.     Payment: If a fine or restitution is imposed, it shall be payable immediately, unless the Court orders otherwise under 18 U.S.C. § 3572(d). The Defendant may be required to pay interest if the fine is not paid when due.

       e.     Forfeiture: The Court may enter an order of forfeiture of assets directly traceable to the offense, substitute assets, and/or a money judgment equal to the value of the property subject to forfeiture.

       f.     Collection of Debts: If the Court imposes a fine or restitution, this Office's Financial Litigation Unit will be responsible for collecting the debt. If the Court establishes a schedule of payments, the Defendant agrees that: (1) the full amount of the fine or restitution is nonetheless due and owing immediately; (2) the schedule of payments is merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment; and (3) the United States may fully employ all powers to collect on the total amount of the debt as provided by law. Until the debt is paid, the Defendant agrees to disclose all assets in which the Defendant has any interest or over which the Defendant exercises direct or indirect control. Until the money judgment is satisfied, the Defendant authorizes this Office to obtain a credit report in order to evaluate the Defendant's ability to pay, and to request and review the Defendant's federal and state income tax returns. The Defendant agrees to complete and sign a copy of IRS Form 8821 (relating to the voluntary disclosure of federal tax return information) and a financial statement in a form provided by this Office.

Waiver of Rights

       4.     The Defendant understands that by entering into this Agreement, the Defendant surrenders certain rights as outlined below:

       a.     If the Defendant had pled not guilty and persisted in that plea, the Defendant would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

       b.     If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

United States v. Noland Rheubottom
November 9, 2021
Page 4

        c.      If the Defendant went to trial, the Government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the Government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in defense, however, the Defendant would have the subpoena power of the Court to compel the witnesses to attend.

        d.      The Defendant would have the right to testify in the Defendant's own defense if the Defendant so chose, and the Defendant would have the right to refuse to testify. If the Defendant chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from the Defendant's decision not to testify.

        e.      If the Defendant were found guilty after a trial, the Defendant would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

        f.      By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that the Defendant may have to answer the Court's questions both about the rights being given up and about the facts of the case. Any statements that the Defendant makes during such a hearing would not be admissible against the Defendant during a trial except in a criminal proceeding for perjury or false statement.

        g.      If the Court accepts the Defendant's plea of guilty, the Defendant will be giving up the right to file and have the Court rule on pretrial motions, and there will be no further trial or proceeding of any kind in the above-referenced criminal case, and the Court will find the Defendant guilty.

        h.      By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status, including possible denaturalization. The Defendant recognizes that if the Defendant is not a citizen of the United States, or is a naturalized citizen, pleading guilty may have consequences with respect to the Defendant's immigration status. Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including the Defendant's attorney or the Court, can predict with certainty the effect of a conviction on immigration status. The Defendant is not relying on any promise or belief about the immigration consequences of pleading guilty. The Defendant nevertheless affirms that the Defendant wants to plead guilty regardless of any potential immigration consequences.

United States v. Noland Rheubottom
November 9, 2021
Page 5

## Advisory Sentencing Guidelines Apply

5.      The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. § 3551-3742 (excepting 18 U.S.C. § 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

## Factual and Advisory Guidelines Stipulation

6.      This Office and the Defendant stipulate and agree to the Statement of Facts set forth in Attachment A, which is incorporated by reference herein.

a.      This Office and the Defendant agree that the applicable base offense level for Count One **Five** is **20** pursuant to United States Sentencing Guidelines ("U.S.S.G.") § 2B3.1(a);

b.      This Office does not oppose a **2**-level reduction in the Defendant's adjusted offense level pursuant to U.S.S.G. § 3E1.1(a), based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for the Defendant's criminal conduct. This Office agrees to make a motion pursuant to U.S.S.G. § 3E1.1(b) for an additional one-level decrease in recognition of the Defendant's timely notification of his intention to plead guilty. This Office may oppose any adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1(a) and may decline to make a motion pursuant to U.S.S.G. § 3E1.1(b), if the Defendant: (i) fails to admit each and every item in the factual stipulation; (ii) denies involvement in the offense; (iii) gives conflicting statements about the Defendant's involvement in the offense; (iv) is untruthful with the Court, this Office, or the United States Probation Office; (v) obstructs or attempts to obstruct justice prior to sentencing; (vi) engages in any criminal conduct between the date of this Agreement and the date of sentencing; (vii) attempts to withdraw the plea of guilty; or (viii) violates this Agreement in any way.

c.      The final offense level is **17**.

d.      The parties further stipulate and agree that the guideline sentence for Count Six – Using, Carrying, and Brandishing a Firearm During and in Relation to Crime of Violence - is 84 months, pursuant to U.S.S.G. § 2K2.4(b) and 18 U.S.C. § 924(c)(1)(A)(i). The Defendant understands that the sentence

whatsoever. This includes a waiver of all right to appeal the Defendant's conviction on the ground that the statute(s) to which the Defendant is pleading guilty is unconstitutional, or on the ground that the admitted conduct does not fall within the scope of the statute(s), to the extent that such challenges legally can be waived.

      b.    The Defendant and this Office knowingly and expressly waive all rights conferred by 18 U.S.C. § 3742 to appeal whatever sentence is imposed (including any term of imprisonment, fine, term of supervised release, or order of restitution) for any reason (including the establishment of the advisory sentencing guidelines range, the determination of the Defendant's criminal history, the weighing of the sentencing factors, and any constitutional challenges to the calculation and imposition of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release), except as follows:

      i.    The Defendant reserves the right to appeal the sentence of imprisonment if the total term of imprisonment exceeds 120 months; and

      ii.    This Office reserves the right to appeal the sentence of imprisonment if the total term of imprisonment is less than 120 months.

      c.    The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

### Forfeiture

12.    The Defendant understands that the Court may enter an Order of Forfeiture as part of the Defendant's sentence, and that the Order of Forfeiture may include assets directly traceable to the offense(s), substitute assets, and/or a money judgment equal to the value of the property derived from, or otherwise involved in, the offenses.

13.    Specifically, but without limitation on the Government's right to forfeit all property subject to forfeiture as permitted by law, the Defendant agrees to forfeit to the United States all of the Defendant's right, title, and interest in the following items that the Defendant agrees constitute money, property, and/or assets derived from or obtained by the Defendant as a result of, or used to facilitate the commission of, the Defendant's illegal activities: a Colt, .38 special revolver handgun, serial number 589775.

14.    The Defendant agrees to consent to the entry of orders of forfeiture for the property described herein and waives the requirements of Federal Rules of Criminal Procedure 11(b)(1)(J), 32.2, and 43(a) regarding notice of the forfeiture in the charging instrument, advice regarding forfeiture during the change of plea hearing, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment.

United States v. Noland Rheubottom
November 9, 2021
Page 8

15.     The Defendant agrees to assist fully in the forfeiture of the above property. The
Defendant agrees to disclose all assets and sources of income, to consent to all requests for access
to information related to assets and income, and to take all steps necessary to pass clear title to the
forfeited assets to the United States, including executing all documents necessary to transfer such
title, assisting in bringing any assets located outside of the United States within the jurisdiction of
the United States, and taking whatever steps are necessary to ensure that assets subject to forfeiture
are made available for forfeiture.

16.     The Defendant waives all challenges to any forfeiture carried out in accordance
with this Agreement on any grounds, including any and all constitutional, legal, equitable,
statutory, or administrative grounds brought by any means, including through direct appeal, habeas
corpus petition, or civil complaint. The Defendant will not challenge or seek review of any civil
or administrative forfeiture of any property subject to forfeiture under this Agreement, and will
not assist any third party with any challenge or review or any petition for remission of forfeiture.

Defendant's Conduct Prior to Sentencing and Breach

17.     Between now and the date of the sentencing, the Defendant will not engage in
conduct that constitutes obstruction of justice under U.S.S.G. § 3C1.1; will not violate any federal,
state, or local law; will acknowledge guilt to the probation officer and the Court; will be truthful
in any statement to the Court, this Office, law enforcement agents, and probation officers; will
cooperate in the preparation of the presentence report; and will not move to withdraw from the
plea of guilty or from this Agreement.

18.     If the Defendant engages in conduct prior to sentencing that violates the above
paragraph of this Agreement, and the Court finds a violation by a preponderance of the evidence,
then: (i) this Office will be free from its obligations under this Agreement; (ii) this Office may
make sentencing arguments and recommendations different from those set out in this Agreement,
even if the Agreement was reached pursuant to Rule 11(c)(1)(C); and (iii) in any criminal or civil
proceeding, this Office will be free to use against the Defendant all statements made by the
Defendant and any of the information or materials provided by the Defendant, including
statements, information, and materials provided pursuant to this Agreement, and statements made
during proceedings before the Court pursuant to Rule 11 of the Federal Rules of Criminal
Procedure. A determination that this Office is released from its obligations under this Agreement
will not permit the Defendant to withdraw the guilty plea. The Defendant acknowledges that the
Defendant may not withdraw the Defendant's guilty plea—even if made pursuant to Rule
11(c)(1)(C)—if the Court finds that the Defendant breached the Agreement. In that event, neither
the Court nor the Government will be bound by the specific sentence or sentencing range agreed
and stipulated to herein pursuant to Rule 11(c)(1)(C).

United States v. Noland Rheubottom
November 9, 2021
Page 9

## Court Not a Party

19.      The Court is not a party to this Agreement. The sentence to be imposed is within the sole discretion of the Court, and the Court is under no obligation to accept this plea agreement. In the event the Court rejects this Rule 11(c)(1)(C) plea agreement, pursuant to Rule 11(c)(5)(C), the Defendant will be informed that he may withdraw the plea. If the Defendant persists in the guilty plea thereafter, the Defendant understands that the disposition of the case may be less favorable than that contemplated by this agreement. The Defendant understands that neither this Office, the Defendant's attorney, nor the Court can make a binding prediction or promise that the Court will accept this Agreement. The Defendant agrees that no one has made such a binding prediction or promise.

## Entire Agreement

20.      This letter, together with the Sealed Supplement, constitutes the complete plea agreement in this case. This letter, together with the Sealed Supplement, supersedes any prior understandings, promises, or conditions between this Office and the Defendant. There are no other agreements, promises, undertakings, or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement. No changes to this Agreement will be effective unless in writing, signed by all parties and approved by the Court.

If the Defendant fully accepts each and every term and condition of this Agreement, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Erek L. Barron
United States Attorney

John W. Sippel, Jr.
Assistant United States Attorney

United States v. Noland Rheubottom
November 9, 2021
Page 10

I have read this Agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

08-02-22
Date

Noland Rheubottom

I am the Defendant's attorney. I have carefully reviewed every part of this Agreement, including the Sealed Supplement with the Defendant. The Defendant advises me that the Defendant understands and accepts its terms. To my knowledge, the Defendant's decision to enter into this Agreement is an informed and voluntary one.

8-2-22
Date

Jennifer E. Smith, Esquire
Counsel for Noland Rheubottom

United States v. Noland Rheubottom
November 9, 2021
Page 11

## ATTACHMENT A

### STIPULATION OF FACTS

*The undersigned parties stipulate and agree that if this case had proceeded to trial, this Office would have proven the following facts beyond a reasonable doubt. The undersigned parties also stipulate and agree that the following facts do not encompass all of the evidence that would have been presented had this matter proceeded to trial.*

On December 22, 2019, at approximately 8:20 a.m., defendant Noland Rheubottom and co-defendant James Featherstone entered the Crown gas station convenience store located at 804 W. Bel Air Avenue, Aberdeen, Maryland 21001. Rheubottom and Featherstone brandished handguns and robbed the store of U.S. currency and lottery scratch-off tickets. The two men also robbed an employee of his personal belongings (cash). Defendants Rheubottom and Featherstone then fled the gas station in a silver Toyota Corolla, bearing Maryland license tag number 8DP4312.

Aberdeen Police Department ("APD") officers responded to the area and spotted the silver Toyota Corolla. An APD officer attempted to detain the vehicle and occupants at gunpoint, but the vehicle fled and entered I-95. Police officers followed the vehicle and attempted to corral the vehicle while it was traveling on I-95. At one point, the vehicle swerved in attempt to strike one of the police vehicles. The suspect vehicle then exited I-95 and headed towards Havre de Grace. Havre de Grace police officers joined the pursuit in effort to stop the suspect vehicle. Officers placed stop sticks in the roadway which resulted in the deflation of the suspect vehicle's driver side tires. The suspect vehicle drove into a police barricade and defendants Rheubottom and Featherstone were taken into custody.

During the search of the Toyota Corolla vehicle, law enforcement officers recovered a Colt, .38 special revolver handgun, serial number 589775, on the front passenger floorboard of the vehicle. A WaWa bag was also located in the vehicle, containing Maryland lottery tickets, coin rolls, and loose cash. The following items were also recovered from the vehicle: a brown glove; a Maryland driver's license in Featherstone's name; two letters addressed to Featherstone; an LG cell phone; a Samsung cell phone; vehicle emissions paperwork; two brown gloves; a black hood; and a black glove.

At all times relevant to the events discussed above, the Crown gas station located at 804 W. Bel Air Avenue, Aberdeen, Maryland 21001, conducted business in and affecting interstate commerce.

Defendant Rheubottom stipulates that he used, carried, and brandished a firearm during and in relation to the robbery of the Crown gas station on December 22, 2019.

United States v. Noland Rheubottom
November 9, 2021
Page 12

SO STIPULATED:

John W. Sippel, Jr.
Assistant United States Attorney

Noland Rheubottom
Defendant

Jennifer E. Smith, Esquire
Counsel for Noland Rheubottom