IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| v. | * | Case No. 20-SAG-428 |
| NOLAND RHEUBOTTOM | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**DEFENDANT'S MEMORANDUM IN AID OF SENTENCING**

Mr. Noland Rheubottom submits this Sentencing Memorandum in anticipation of his upcoming sentencing hearing on December 9, 2022. He requests that this Court sentence him to a period of 120 months in accordance with the plea agreement reached pursuant to Rule 11(c)(1)(C). ECF No. 48 at 6. For the reasons set form below, Mr. Rheubottom believes that such a sentence complies with the directive of 18 U.S.C. § 3553(a) that a sentence be sufficient, but not greater than necessary, to comply with the goals of sentencing.

In crafting a sentence, this Court should consult the guidelines, but is permitted to "tailor the sentence in light of other statutory concerns as well" with reference to the factors outlined in 18 U.S.C. § 3553(a). *United States v. Booker*, 125 S. Ct. 738, 757 (2005). The core requirement of § 3553(a) is that the Court impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in § 3553(a)(2). Those factors include (a) the nature and circumstances of the offense and the history and characteristics of the defendant, (b) the kinds of sentences available, (c) the guideline range, (d) the need to avoid unwarranted disparities, (e) the need for restitution, and (f) the need for the sentence to reflect the following: the seriousness of the offense; to promote respect for law and to provide just punishment for the offense; to afford adequate deterrence; to protect the public from future crimes and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment.

### A. The Guidelines Calculation

Pursuant to Mr. Rheubottom's plea agreement, the base offense level for Count Five is 20 pursuant to U.S.S.G. § 2B3.1(a). ECF 48 at 5. After a three-level reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a)-(b), Mr. Rheubottom's final guidelines level for Count Five is a level 17. *Id.* Pursuant to U.S.S.G. § 2K2.4(b) and 18 U.S.C. § 924(c)(1)(A)(i), the guidelines for Count Six are 84 months. *Id.* Mr. Rheubottom has a total criminal history score of 13 due mostly to drug crimes which occurred thirty years ago, resulting in a criminal history category of VI. *See* PSR ¶ 43. Thus, the guidelines range for Count Five is 51 to 63 months and the guidelines range for Count Six is 84 months.

### B. Nature and Circumstances of the Offense

Mr. Rheubottom fully understands the seriousness of the offense in which he took part and the danger an armed robbery poses to all those involved. Mr. Rheubottom quickly accepted responsibility for his actions. Mr. Rheubottom can be seen on video footage instructing a customer to leave the gas station shop. No one was injured in the commission of the offense.

### C. The History and Characteristics of the Defendant

Mr. Rheubottom did not have a stable childhood. His family moved back and forth between Baltimore City and Carroll County. While his parents were married, their relationship was abusive and Mr. Rheubottom recalls his father shooting at his mother's vehicle when she finally decided to leave him. After his parents separation, he only saw his father every couple of months. While his mother Ernestine was able to hold down a job, she was addicted to alcohol for all of Mr. Rheubottom's childhood and he recalls a period where he had to take her to the hospital because she only weighed 70 pounds. Because of his mother's addiction to alcohol, Mr.

Rheubottom and his siblings did not always have food or housing security. Mr. Rheubottom began taking care of himself when he was around 15 years old.

Mr. Rheubottom began smoking marijuana when he was 10 years old. His drug use escalated as he began selling and using cocaine in his early twenties. Between the ages of 24 and 26, Mr. Rheubottom sustained three state convictions related to the distribution of cocaine. These convictions resulted in his continued incarceration until he was 54 years old. He received an excessively long series of sentences in the early 1990s in Carroll County, Maryland. The Baltimore Sun at the time noted that Mr. Rheubottom's 45-year sentence was "the longest drug-related term ever in Carroll County," and that he was the only person in Carroll County ever convicted three times of cocaine distribution. *See* Darren M. Allen, *Conviction ends retrial in drug case*, Baltimore Sun (May 25, 1995), available at https://www.baltimoresun.com/news/bs-xpm-1995-05-25-1995145083-story.html (last accessed Nov. 22, 2022). Included in the 45-year sentence was a 25-year no-parole sentence, a 15 year consecutive sentence, and a 7 year consecutive sentence, all for the distribution of cocaine. In 2018, following a hearing which was attended by 70 family members and friends of Mr. Rheubottom, Mr. Rheubottom's 25 year without parole sentence was amended to become a 25 year sentence with parole pursuant to Md. Crim. Law § 5-609.1(b).

Mr. Rheubottom entered prison in 1992 and was not released until 2019, having spent a total of 27 years behind bars. The world he re-entered was entirely different than the one he had left nearly three decades earlier. And unlike groups such as "The Ungers," Mr. Rheubottom was not placed in a re-entry support group or given assigned social workers to help him reintegrate into society. *See i.e.* Michael Millemann, et. al., Releasing Older Prisoners Convicted of Violent Crimes: The Unger Story, 21 U.Md.L.J. Race Relig. Gender & Class 185, 225 (2021) (describing

the network of social work students and fellows who were assigned to inmates released after lengthy periods of incarceration to help them reintegrate into their communities).

Despite having limited resources, Mr. Rheubottom did his best to reintegrate after his release from incarceration. He was employed at Parts Authority in Arundel Mills and was living with a girlfriend in Baltimore City. He regularly spent time with his daughters and his grandchildren. He had purchased a vehicle and was able to drive to and from work. On November 3, 2019, however, Mr. Rheubottom was involved in a car accident. As a result of the car accident, Mr. Rheubottom sustained whiplash and was in serious pain. Further, following the car accident, Mr. Rheubottom lost his ability to use his vehicle. As a result, Mr. Rheubottom was unable to commute to his work in Arundel Mills. Having been incarcerated for nearly 30 years, Mr. Rheubottom did not know how to navigate around this roadblock.

Mr. Rheubottom was friends with his co-defendant, having created a bond over having spent a significant period of their lives in prison and trying to support each other as they reintegrated. After his car accident, Mr. Rheubottom sought insight from his co-defendant. Mr. Rheubottom was within his first year of release and was going to be able to spend his first Christmas with his grandchildren. Mr. Rheubottom's participation in the instant offense was driven out of a desire to be able to buy Christmas gifts for his grandchildren. Mr. Rheubottom had only been released from prison for 8 months when he participated in the instant offense.

Mr. Rheubottom is deeply ashamed of his actions. He is especially ashamed because his friends and family have been so supportive of him, despite his lengthy prior incarceration. He recognizes he has let down the 70 people who appeared in court for him five-years ago to help him get a sentence reduction.  He continues to maintain a close relationship with his children and grandchildren, but feels a deep sense of shame not being able to be physically with them. While

he has been incarcerated on this charge, both of Mr. Rheubottom's parents have passed away – his father in 2020 from a heart attack and his mother in 2021 due to complications from alcoholism. Mr. Rheubottom plans on making productive use of his time in the Bureau of Prisons so he can be with his family in the near future.

### D. The COVID-19 Pandemic

The conditions under which Mr. Rheubottom has been incarcerated since December 2019 weigh in favor of the low of a lenient sentence. In granting a motion for compassionate release, Judge Chuang noted, that the outbreak of COVID-19 "sufficiently increased the severity of the sentence beyond what was originally anticipated." *United States v. Mel*, 2020 WL 2041674 at *3 (Apr. 28, 2020). Mr. Rheubottom has been incarcerated for the entirety of the COVID-19 pandemic, first at the Harford County Detention Center and then at the Chesapeake Detention Facility. Mr. Rhuebottom contracted COVID-19 in 2020 while he was at the Harford County Detention Center and was transferred to Upper Chesapeake Medical Center for treatment where he was placed on an oxygen tank. Mr. Rhuebottom still struggles with shortness of breath he suspects is related to his contraction of COVID-19. In addition, he has been under some of the strictest conditions of detention, has had limited access to programming, and even more limited access to visits with family and friends. In considering the imposition of a sentence, Mr. Rheubottom requests this Court consider both the struggles he has experienced because of COVID-19 over the 30 months, and the ongoing struggles he continues to have as a result of contracting COVID-19 while incarcerated.

### E.   Requests for Bureau of Prisons Recommendations

Mr. Rheubottom plans on using his time in the Bureau of Prisons participating in programming that will set him up for success upon his release. Recognizing this, Mr.

Rheubottom requests this Court make recommendations to the Bureau of Prisons to assist him in that goal. First, Mr. Rheubottom requests that this Court recommend participation in drug treatment within the Bureau of Prisons. Second, he requests this Court recommend on-going mental health treatment.  Finally, given Mr. Rheubottom's older age, he has a variety of health issues. Prior to his arrest in this case, he was scheduled to have surgery to address issues stemming from sciatic nerve pain. During his period of incarceration, he has developed a hernia and requires the use of a hernia belt until a surgery can be performed to address the issue. As such, he requests that this Court make a recommendation he be sent to FMC Butner so that he can receive the necessary medical treatment.

## CONCLUSION

For the foregoing reasons, Mr. Rheubottom respectfully requests that this Court impose a sentence of 120 months in this case.

Respectfully,

_____/s/_____
Gary E. Proctor
Bar Roll Number 27936

_____/s/_____
Jennifer E. Smith (Bar No. 20767)
The Law Offices of Gary E. Proctor, LLC
8 E. Mulberry Street
Baltimore, Maryland 21202
(410) 444-1500 (tel.)
(443) 836-9162 (fac.)
jennsmith0890@gmail.com

*Attorney for Defendant.*

## CERTIFICATE OF SERVICE

  I hereby certify that on this day, November 22, 2022, a copy of the foregoing was served on all parties via ECF.

                     _____/s/_____
                       Jennifer E. Smith